IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICKY L. WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 12-CV-51-PJC |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner | ) |
| of the Social Security Administration[1], | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Ricky L. Watts ("Watts"), pursuant to U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will go directly to the Tenth Circuit Court of Appeals. Watts appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Watts was not disabled. For the reasons discussed below, the Court **REVERSES** the Commissioner's decision.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, the current Acting Commissioner of the Social Security Administration, is substituted for Michael J. Astrue as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**Claimant's Background**

At the time of the December 21, 2010 hearing before the ALJ, Watts was 52 years old. (R. 24). Watts had graduated from college and obtained a master's degree. (R. 27, 31). He had work experience as an economist, accountant, manager, and controller. (R. 27-29, 31).

Watts testified that he had been imprisoned for two and a half years for an attempted burglary charge. (R. 26-27). He said that he had been intoxicated at the time of the incident. (R. 27). After his release, he had difficulty being able to function at work. (R. 30). He testified that he had "mental episodes" during which he was unable to focus. (R. 35). He said that he had occasions where his mind would "shut down" for a few days due to stress and he would not show up for work. (R. 30). Watts' boss was understanding of his circumstances, and he gave Watts a place to live when he was recovering from one of those episodes. *Id.* He believed that he missed seven to ten days of work each month due to his issues. *Id.* Watts was diagnosed with depression after a suicide attempt, and he was placed on medications. (R. 29). He believed that he lost his job in 2009 because of acquisition of the company and because of his "poor job performance." *Id.* After he lost his job, he quit taking his medications and became homeless for approximately four months. (R. 29-30).

The medical records in the administrative transcript show that Watts was transported to Integris Bass Baptist Health Center in Enid, Oklahoma, after a motorcycle accident on April 27, 2008. (R. 198-212). Watts was confused and smelled of alcohol. (R. 200-02). The doctor admitted Watts to the hospital for hyponatremia[2] and acute alcohol intoxication. (R. 198-99). Watts left the hospital on April 28, 2008, against medical advice. *Id.*

---

[2] Hyponatremia is a deficiency of sodium in the blood. Dorland's Illustrated Medical Dictionary 916 (31st ed. 2007).

2

On November 17, 2008, Watts presented to Kaiser Permanente Santa Clara Medical Center ("Kaiser") for a general physical examination and lab testing. (R. 262-63, 337-42). During Watts' examination, he told the doctor that he had been feeling sad and stressed, and that he had tried to kill himself within the previous two months. (R. 263, 337, 339-42). Watts was diagnosed with mild allergies and depression, and was started on Prozac. *Id*. At Watts' request, the doctor sent him that day for a mental status examination with a therapist at Kaiser's psychiatry department. (R. 264, 337-42). He told the therapist that he had felt increasingly depressed and anxious after he had been released from jail. (R. 337). He described that he had attempted suicide by cutting his left wrist with a razor blade and swallowing three razor blades. *Id*. He said that he did not seek medical attention because "he did not want to jeopardize his situation." *Id*. Watts said that he was not suicidal at the time of the examination, and he signed a contract for his safety. *Id*.

When Watts returned for his follow-up appointment at Kaiser on November 28, 2008, he complained of feeling depressed, anxious, and worthless. (R. 264, 326). He had mood swings, dizziness, nightmares, difficulty sleeping, and poor energy. *Id.* He felt worried most of the time and was afraid to get into a car and drive. *Id.* He reported that when he was incarcerated he had bad things happen to him and that he had seen bad things happen to others. *Id.* He said that he had been in a recovery program during his incarceration and had been sober for two years. *Id.* Watts' Global Assessment of Functioning ("GAF")[3] was scored as 51-60, moderate symptoms.

---

[3] The GAF score represents Axis V of a Multiaxial Assessment system. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-36 (Text Revision 4th ed. 2000) (hereinafter "DSM IV"). A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id.* at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id.* at 34. A score between 31-40

(R. 266). When Watts presented on December 19, 2008, he was feeling better and was worrying and shaking less. (R. 269). His presenting mood was "slightly depressed." *Id*. His GAF was scored as 61-70, mild symptoms. *Id*.

On January 15, 2009, Watts saw Jacob Benjamin Towery, M.D., at Kaiser for an initial psychiatric evaluation. (R. 270-74, 290-99). Watts complained of symptoms of anger and violence that included threatening, assaultive behavior, and non-physical and explosive anger. (R. 271, 290, 295). He reported that he had problems with anxiety, excessive worrying, restlessness, muscle tension, hypervigilance and somatic complaints. *Id*. Dr. Towery's Axis I[4] diagnosis was alcohol dependence in early remission and substance-induced mood disorder, and he scored Watts' GAF as 61-70, mild symptoms. (R. 274, 298).

Watts began individual counseling, group therapy for trauma, and pharmacological treatment at North Care Center ("North Care") in Oklahoma City on May 7, 2009. (R. 358-78). Watts was homeless, but was living at the Jesus House, where he attended daily Alcoholics Anonymous meetings. (R. 359, 361). Watts said that he wanted to stay clean and sober. (R. 359-60). He reported that he had problems with depression, anxiety, racing thoughts, and difficulty sleeping. *Id*. He said that he had continued problems from when he was in jail in 2007 and 2008. (R. 358-59, 361). Watts said that he had been in 12 months of inpatient treatment for alcohol detoxification and that he had been diagnosed with bipolar disorder. (R. 361). *Id*.

---

indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id.*

[4] The multiaxial system "facilitates comprehensive and systematic evaluation." DSM IV at 27.

When Watts was seen at North Care on August 20, 2009, the physician checked boxes that Watts had an appropriate affect and normal mood. (R. 375). His next appointment was scheduled for November 12, 2009. (R. 374).

North Care's discharge summary dated February 2, 2010 reflects that Watts was discharged by them on November 16, 2009, and that he had not been seen at North Care following his leaving the Jesus House "without warning." (R. 376-78). The summary indicates that during Watts' treatment, he had been compliant with his medications and that he maintained his medical clinic appointments. (R. 376). Watts' Axis I discharge diagnoses were major depressive disorder recurrent, severe without psychotic features; panic disorder without agoraphobia; and alcohol dependence. *Id*. His GAF was scored as 55. (R. 377). His medications at his discharge were Prozac and Ambien. *Id*.

The record includes Watts' medical records from Jackie Brannon Correctional Center from December 8, 2009 to March 16, 2010. (R. 227-55). At Watts' intake screening, he reported that he was being treated for mental problems and was taking Prozac for his symptoms. (R. 232). Watts was not given a referral for mental health services, and it is unclear if he was provided his prescription for Prozac during his incarceration. *Id*. On March 16, 2010, he requested to be seen by a mental health professional because he had difficulty sleeping. (R. 249). The appointment form indicates that he was not given medication for his symptoms. (R. 250).

On January 4, 2010, nonexamining agency consultant Laura Lochner, Ph.D., completed a Psychiatric Review Technique form. (R. 213-226). In the Consultant's Notes section, Dr. Lockner wrote that Watts reported no past mental health treatment and no medications for any mental health conditions. (R. 225). There was no medical evidence in the file. *Id.* Dr. Lochner noted that Watts had not responded to numerous letters sent to him by the agency and had missed

5

an appointment for a mental status examination. *Id*. She added that Watts' mother had subsequently advised the agency that Watts had missed his appointment because he had been in prison since November 24, 2009, for a DUI conviction. *Id*. Dr. Lochner said that Watts' claim was "currently insufficient to rate." *Id*. On June 18, 2010, nonexamining agency consultant Carolyn Goodrich, Ph.D., reviewed the medical evidence in the record and affirmed Dr. Lochner's assessment. (R. 353).

## Procedural History

In January 2010, Watts filed an application for Title II disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (R. 98-99). The application was denied initially and on reconsideration. (R. 46-49, 52-54). A hearing before ALJ W. Howard O'Bryan, Jr., was held on December 21, 2010. (R. 22-38). By decision dated February 28, 2011, the ALJ found that Watts was not disabled. (R. 10-21). On December 8, 2011, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

claim. 20 C.F.R. § 404.1520.[5]  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

---

[5] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Decision of the Administrative Law Judge**

The ALJ found that Watts met insured status requirements through December 31, 2013. (R. 12). At Step One, the ALJ found that Watts had not engaged in substantial gainful activity since his alleged onset date of February 20, 2009. *Id.* At Step Two, the ALJ found that Watts had severe impairments of affective mood disorder, anxiety-related disorder, and substance addiction disorder. *Id.* At Step Three, the ALJ found that Watts' impairments did not meet any Listing. (R. 14).

The ALJ determined that Watts had the RFC to perform the full range of medium work. (R. 15). The ALJ then stated "He has nonexertional limitations anxiety and depression but is able to perform work related activities." *Id.* At Step Four, the ALJ found that Watts could perform his past relevant work. (R. 16). Thus, the ALJ found that Watts was not disabled from February 20, 2009 through the date of the decision. (R. 17).

**Review**

The Court determines that this case should be reversed because the ALJ's decision is not adequate for review. In *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), the Tenth Circuit was faced with an issue that revolved around Step Three of the five-step sequential process, but the general principles it relied upon apply to all of the five steps. The Court said that it could not assess whether the ALJ's findings were supported by substantial evidence when there was an "absence of ALJ findings supported by specific weighing of the evidence." *Id.*

Here, the Court is asked to review an ALJ decision that does not appear to be complete. To the extent that Watts' claims can be understood, they revolve around his mental issues. Yet, the only sentence of the ALJ's RFC determination that addressed those issues is not easily understood: "[Watts] has nonexertional limitations anxiety and depression but is able to

perform work related activities." (R. 15). The ALJ's subsequent discussion is insufficient to provide illumination. (R. 15-16).

The problem of the insufficiency of the ALJ's discussion of whether Watts had nonexertional limitations due to his mental issues is compounded by the issue of drug and alcohol use. Watts raises this issue in his briefing and explains that there are specific procedures that an ALJ must follow in analyzing whether drug and alcohol use is material to the question of disability. 20 C.F.R. § 404.1535. The undersigned finds no reference to Section 404.1535 in the ALJ's decision, yet the ALJ's discussion necessarily includes Watts' history of alcohol issues. The Commissioner argues that Section 404.1535 was not brought into play because a finding of disability is a condition precedent to that procedure. The difficulty is that the ALJ's decision simply does not make any analysis that can be followed by this Court including the reasoning that the Commissioner suggests was made.

Further, the only consulting opinions the ALJ had available to him rejected Watts' claims because apparently there was no medical evidence of record at the time the forms were completed. (R. 213-26, 353). The agency's records show that there was no mental status examination of Watts because he was in prison at the time. (R. 225).

At the hearing before the ALJ, when it was time for the ALJ to question the vocational expert regarding the mental demands of Watts' past relevant work, the ALJ punted:

> And as far as the mental side of this thing is concerned, of course, I'll have to – I don't know what I've have [sic] to do on that. I'm not going to go into that part of it, because I frankly don't know how to ask a question. Can you ask a question, counsel, on the mental side, if you wanted to? I can't think of a way to do it. Obviously he'd have to be able to use his mind to be able to do those kinds of work.

(R. 34-35). Between the ALJ and Watts' counsel, no questions were asked of the vocational

expert regarding what the mental demands of Watts' past relevant work were. (R. 35-37). Without knowing what those demands were, there could be no Step Four analysis. *See Winfrey v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir. 1996).

For all of these reasons, the Court reverses. There is nothing to review in the "absence of ALJ findings supported by specific weighing of the evidence." *Clifton*, 79 F.3d at 1009-10.

This Court takes no position on the merits of Watts' disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 27th day of March 2013.

_____
Paul J. Cleary
United States Magistrate Judge